IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID PASCHKE,

               Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

               Defendant.

Case No. 6:17-cv-01167-MA

OPINION AND ORDER

ROBYN M. REBERS
P.O. Box 3530
Wilsonville, OR 97070

    Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

RYAN TA LU
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff David Paschke seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court reverses and remands the Commissioner's decision for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed his DIB application on October 18, 2013, alleging disability beginning October 1, 2011, due to spondylosis; neck, shoulder and back pain; right arm numbness and tingling; headaches; leg numbness; and depression. Tr. Soc. Sec. Admin. R. ("Tr.") 10, 67-68, 79, 180, ECF No. 13. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on March 8, 2016, at which Plaintiff appeared with his attorney and testified. A vocational expert, Francene M. Geers, also appeared at the hearing and testified. On April 20, 2016, the ALJ issued an unfavorable decision. Plaintiff appealed and submitted additional materials to the Appeals Council. The Appeals Council found the evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. The Appeals Council did not consider and exhibit the evidence, and thus did not include the additional materials as part of the record before the court. Tr. 2-4. The Appeals Council denied Plaintiff's request for review, and consequently, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1963, and was 48 years old on the alleged onset of disability date and 52 years old on the date of the hearing. Plaintiff completed high school. Tr. 181. Plaintiff has past relevant work as a steam cleaner and warehouse worker. Tr. 21.

## **THE ALJ'S DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2016. Tr. 12. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease and spondylosis; mild left upper extremity carpal tunnel syndrome; and headaches. Tr. 12. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [Plaintiff] can never climb ladders, ropes and scaffolds; [Plaintiff] can frequently balance; [Plaintiff] can occasionally climb ramps and stairs; [Plaintiff] can occasionally stoop, crouch, kneel, and crawl; [Plaintiff] can occasionally perform

bilateral overhead reaching; and [Plaintiff] is limited to occasional handling with his non-dominant left upper extremity.

Tr. 15.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. The ALJ identified such representative occupations as office helper, motel cleaner, and bakery line worker. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from October 4, 2013 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; (2) the ALJ improperly excluded certain limitations from the RFC; (3) the Appeals Council improperly excluded evidence from the record; and (4) the ALJ could not rely upon the vocational expert's ("VE") testimony because the hypothetical question posed to the VE differed from the RFC in the decision, and the VE's job numbers were not reliable. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence is

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159; (internal quotations omitted); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I. The ALJ Erred in Discounting Plaintiff's Subjective Symptom Statements

#### A. Standards

On March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded and superceded the Commissioner's prior ruling, SSR 96-7p, as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p, *available at* 2017 WL 5180304, *1 (Oct. 25, 2017). The ALJ's decision issued April 20, 2016, and therefore, SSR 16-3p is applicable to the court's review of this case.[1] In relevant part, SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not

---

[1] SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." SSR 16-3p, *available at* 2017 WL 5180304, *13 n.27 (Oct. 25, 2017).

5 - OPINION AND ORDER

an examination of an individual's character." SSR 16-3p, 2017 WL 5180304 at *2; *Trevizo*, 871 F.3d at 678 n.5.

SSR 16-3p provides a two-step evaluation process for assessing the intensity and persistence of a claimant's symptoms. SSR 16-3p, 2017 WL 5180304 at *3. First, "'the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.'" *Trevizo*, 871 F.3d 678 (quoting *Garrison*, 759 F.3d at 1014-15)). Second, if the claimant satisfies the first step, absent evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reason for doing so.'" *Id.* The Ninth Circuit has observed that SSR 16-3p emphasizes what precedent already requires – "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the [ALJ] find[s] that the individual has a medically determinable impairments(s) that could reasonably be expected to produce those symptoms" and not delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p) (alterations in original).

In assessing a claimant's testimony and statements, an ALJ may consider a number of factors, including: (1) the severity of the objective medical evidence of record; (2) the statements of the claimant about the intensity, persistence and limiting effects of symptoms; (3) clinical findings and observations about such symptoms; (4) statements from other sources that have information about the claimant's symptoms; (5) the daily activities of the claimant; (6) any factors that precipitate or aggravate the symptoms; (7) the type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms; (8) treatment, other than medication, for relief of pain or other

symptoms; and (9) any other factors about the claimant's functional limitations and restrictions due to pain or symptoms. SSR 16-3p, 2017 WL 5180304 at *7-8; 20 C.F.R. § 404.1529(c)(3). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

**B.     Analysis**

At the hearing, Plaintiff testified that he is unable to sustain full-time employment due to his conditions. Plaintiff testified that he is 52 years old, right-handed, lives alone, graduated from high school, and is able to read, write, and perform basic math. Tr. 43-44. Plaintiff testified that since his alleged onset of disability, he has performed some pressure-washing, but has only done so for two to four hours at a time, and is in a lot of pain for the following week. Tr. 45-46.

Plaintiff stated that he is unable to work due to neck and back pain, headaches and nausea. Tr. 47. Plaintiff estimated that he can sit for 10 minutes, and stand in one place for a few minutes, then needs to walk around due to pain. Tr. 48-49. Plaintiff further testified that looking down for longer than a few seconds causes pain in his neck. Tr. 49. Plaintiff stated that he uses heating pads on his neck to help with the pain. Tr. 50. Plaintiff testified that he takes ibuprofen, tramadol, oxycodone, and gabapentin for pain control. Tr. 51. Plaintiffs stated that he has numbness and tingling in his left arm, and difficulty sleeping through the night due to pain. Tr. 53-54. Plaintiff also stated that he has trouble with depression, which causes him to isolate. Tr. 52.

In a December 3, 2013 Function Report, Plaintiff indicated that pain and burning in his neck makes it difficult to sit or stand for long periods and that looking down for extended periods increases his neck pain. Tr. 197. He described that lying down and rest provide the most relief for his neck pain. Tr. 197. Plaintiff indicated he had difficulty putting on socks due to back pain, and shaving is difficult because he cannot look up, but otherwise has no trouble with self-care. Tr. 199. Plaintiff explained that he is able to prepare meals, can perform household chores slowly, and does not perform any heavy yard work. Tr. 200. Plaintiff stated that he is able to walk and drive, and shops for groceries a couple of times each week. Tr. 200. Plaintiff stated that he no longer hunts and fishes because he cannot be on his feet for very long. Tr. 201. Plaintiff indicated that his doctor recommended swimming and water aerobics for exercise, and that he swims three times a week and soaks in the hot tub to alleviate pain. Tr. 201.

Plaintiff indicated that his conditions impact his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, concentration, completing tasks, and using his hands. Tr. 202. Plaintiff estimated he can walk half a mile before needing to rest, and that walking is easier than standing in one place. Tr. 202.

In the decision, the ALJ did not apply SSR 16-3p, but instead referenced SSR 96-7p. Tr. 16. The ALJ found that Plaintiff has medically determinable impairments that could cause Plaintiff's alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the evidence. Tr. 16. ALJ offered several reasons for discounting Plaintiff's testimony, including that: (1) the objective medical evidence does not support his allegations of disabling psychological and physical limitations; (2) Plaintiff's

conservative course of treatment undermines his allegations; (3) Plaintiff's self-employment earnings and inconsistent statements undermine his allegations of disability; and (4) Plaintiff's daily activities suggest he is more functional than alleged. The ALJ's reasoning falls short of clear and convincing.

　　*1.　inconsistency with medical record*

Contradiction with the medical record is a relevant consideration in discounting a claimant's symptom testimony. *Ghanim*, 763 F.3d at 1164; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that an ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding). In the decision, at step two, the ALJ thoroughly discussed the evidence of Plaintiff's anxiety and depression. Tr. 12-14. When assessing Plaintiff's symptom testimony, the ALJ referenced the step two findings and concluded that his mental status examination findings do not support his allegations of disabling psychological impairments. Tr. 16. At step two, the ALJ discussed that Plaintiff's complaints have been situational in nature, his symptoms have waxed and waned, and that his depressive symptoms primarily have been related to his pain. Tr. 14. The ALJ observed that Plaintiff has not sought specialized mental health treatment, and that his psychological symptoms have not interfered with his activities of daily living and social functioning, and accordingly found his mental health conditions not severe. Tr. 14. The court notes that Plaintiff has not challenged this finding. Having carefully reviewed the record, the court determines that the ALJ's findings about Plaintiff's depression and anxiety are supported by substantial evidence in the record. Thus, based on the absence of severe mental health examination findings and that Plaintiff's mental health symptoms appear well-controlled with medication, the court concludes the ALJ could reasonably discount Plaintiff's credibility on this basis.

However, the ALJ's findings concerning Plaintiff's physical limitations are another matter. In the decision, ALJ acknowledges that there are objective findings "depicting some abnormal conditions" but determined they do not support Plaintiff's allegations of "entirely disability symptoms." Tr. 16. The ALJ discussed an August 3, 2012 cervical MRI showing "[p]rominent left C2-3 and right C3-4 facet hypertrophy with marrow edema" and the "bilateral C5-6 foraminal stenosis and the C7-T1 foraminal stenosis look worse" than a comparison MRI dated October 2006. Tr. 17, 282. Additionally, the ALJ discussed nerve conduction studies and EMG studies dated August 28, 2012, that "depicted findings consistent with mild left carpal tunnel syndrome." Tr. 17. However, the ALJ failed to indicate that the EMG findings also reflected that a "left C6 or less likely C7 radiculopathy could not be ruled out." Tr. 275.

The ALJ also discussed an October 26, 2013, lumbar MRI that showed multi-level degenerative disc disease. Tr. 280. There, L3-4 showed "prominent disc bulge/protrusion at the level of the right foramen" and "[c]ontact with the exiting L3 nerve root is seen at this location" and at L4-5, bulging causes narrowing of the foramen and may make contact with the L4 nerve root lateral to the foramen." Tr. 280. Overall, as the ALJ indicated, the MRI was "suspicious for nerve root impingement on the right at the L3-4 level and on the left at L4-5." Tr. 17, 280. Despite these abnormal findings, the ALJ observed that there was no "cord compression" and concluded that the results were "reasonably consistent with the profile of a person capable of performing less than a full range of light work" with postural and handling restrictions. Tr. 17. With respect the imaging, the ALJ appears to have improperly cherry-picked some essentially normal findings, while downplaying or ignoring findings of impingement or radiculopathy that could explain Plaintiff's pain allegations.

*Ghanim*, 763 F.3d at 1164; *cf. Kelly v. Berryhill*, ___ F. App'x ___, 2018 WL 2022575, *2 (9th Cir. May 1, 2018) (holding ALJ improperly discounted abnormal MRI findings and other abnormal testing when discussing physician's opinion, improperly substituting ALJ's own lay opinion).

The ALJ then discussed Plaintiff's recurring complaints of neck pain, back pain, left upper extremity tingling and numbness, noted that Plaintiff had demonstrated occasional tenderness to palpation, limited range of motion, and occasional positive straight leg testing. Tr. 18-19, 269, 461, 468, 476. The ALJ contrasted those objective findings with other occasional normal ranges of motion and negative straight leg testing. Tr. 18, 19, 276. The ALJ highlighted treatment notes showing that Plaintiff was "going to the pool," "trying to exercise more," or that he would "wear a neck brace" when working. Tr. 18, 447, 448, 463. The ALJ then concluded based on the conflicting evidence and the cervical and lumbar imaging studies, Plaintiff could perform a reduced range of light work. The court disagrees.

When read as a whole, the treatment notes reflect ongoing, persistent neck and back pain that tends to support Plaintiff's testimony. Here, Plaintiff consistently reported to his treating providers Terrence M. Hansen, D.C., and Matt West, N.D., that he experienced four out of ten pain, flaring to eight out of ten pain with any activity, even while taking his narcotic pain medication. Tr. 305-418, 428-65. Thus, the court concludes that the ALJ's findings in this regard are not supported by substantial evidence. *Ghanim*, 763 F.3d at 1164.

   2.   *conservative treatment*

The ALJ discounted Plaintiff's credibility because he engaged in only conservative treatment, including pain medication, chiropractic treatment, and massage therapy. A conservative course of

11 - OPINION AND ORDER

treatment sometimes may be used discount a claimant's allegations of disabling symptoms. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). However, the record here shows that Plaintiff has been treated for years with prescription pain medication, including oxycodone and gabapentin, without complete relief. Tr. 428-465. Indeed, Dr. West indicated that Plaintiff's chronic neck and back pain was *not* controlled with medication, and that Plaintiff's quality of life was "really poor" due to pain and sleeplessness from pain. Tr. 430. Similarly, Plaintiff's longstanding chiropractic treatment from 2012 to 2014, was only marginally beneficial. Tr. 421. Dr. Hansen's treatment notes reflect Plaintiff consistently reports moderate, frequent pain in his neck, arm, shoulder, and back, ranging from four to six on a ten point scale. Tr. 305-96. Thus, even if the Plaintiff's treatment could accurately be characterized as "conservative," substantial evidence does not support the ALJ's suggestion that his treatment modalities have effectively controlled his pain. *See, e.g., Harrison v. Astrue*, 3:11-cv-00365-MA, 2012 WL 527419, at *7 (D. Or. Feb. 16, 2012) (determining that narcotics, prescription muscle relaxers, nerve blocks, and multiple steroid injections for alleged back pain was not conservative treatment).

Additionally, the ALJ discredited Plaintiff's allegations of disabling pain because he declined a referral to a pain clinic on June 11, 2010. Tr. 20, 245. An "unexplained, or inadequately explained, failure to seek treatment," may provide a basis for discrediting a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "However, lack of medical treatment due to an inability to afford medical treatment does not support an adverse credibility determination." *Franz v. Colvin*, 91 F. Supp. 3d 1200, 1208 (D. Or. 2015); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also*

*Trevizo*, 871 F.3d at 681 (noting an inability to afford treatment is not a proper reason to discount claimant's testimony). To be sure, the provider explained at Plaintiff's next visit, he is "unable to afford pain management." Tr. 248. Review of the record reveals several additional instances where Plaintiff declined various treatments or referrals because he lacked insurance or could not afford treatment. Tr. 247 (declining colon cancer screening because lacked insurance); Tr. 260 (awaiting medical assistance for medication and counseling services); Tr. 440 (noting Plaintiff has no insurance and cannot afford medication); Tr. 461 (noting Plaintiff lacks insurance and cannot afford long acting morphine medications and declines methadone). Thus, the court concludes that substantial evidence does not support discounting Plaintiff's statements due to his conservative course of treatment.

        3.     *inconsistent statements and earnings history*

An ALJ may consider prior inconsistent statements concerning symptoms when assessing a claimant's subjective statements and testimony. *Trevizo*, 871 F.3d at 681. An ALJ may consider evidence of a poor work history when assessing a claimant's statements about his ability to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ observed that Plaintiff informed his treating physician that he was not working because he "doesn't have a truck." Tr. 18, 459. Additionally, the ALJ noted that Plaintiff's self-employment earnings for multiple years from 2005 through 2014 reflect earnings below significant gainful activity. The ALJ concluded that in combination, Plaintiff's impairments may not be the primary reason for his continuing unemployment. Tr. 20, 152.

As the ALJ correctly indicated, Plaintiff has a history of low earnings, and that finding is supported by substantial evidence. And, there are some conflicting statements about Plaintiff's working reflected in the record, including that he does not have a truck, that he wears a neck brace when working, and that he has a "few employees" who perform the work. Tr. 459, 461,

However, Plaintiff also consistently reported to his treatment providers that he is only capable of working for a few hours, then experiences painful flare-ups that can last for days. *See, e.g.,* Tr. 45, 294, 430, 461. Additionally, Plaintiff has complained of persistent and worsening neck and back pain going back six or 10 years, which corresponds with his historically low earnings. Tr. 275, 293, 474. Furthermore, Plaintiff alleges that he is incapable of sustaining full-time work, not that he is incapable of all activity. Tr. 42, 294. Such statements are not undermined by Plaintiff's low earnings. On balance, the court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony on this basis.

### 3. *activities of daily living*

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Here, the ALJ found Plaintiff's ability to prepare meals, drive, perform basic household chores, and grocery shop inconsistent with his allegations of disabling neck and back pain. However, the ALJ misconstrues Plaintiff's testimony. In his Function Report, Plaintiff indicated that he only cooks things that take a short amount of time to prepare because standing to cook is difficult. Tr. 199. Plaintiff also noted that he lives alone in a 700 square foot house and breaks up shopping into short trips to avoid pain. Tr. 200. Additionally, there is no indication that Plaintiff engaged these activities for a substantial

portion of any day, or that these activities are transferrable to a work setting. *See Orn*, 495 F.3d at 639 (daily activities may support adverse credibility determination where they comprise a "substantial portion" of the day or are "transferrable" to a work setting). Thus, Plaintiff's report of significant back and neck pain and headaches are not inconsistent with his ability to perform minimal daily activities. Therefore, the ALJ's reasoning is not supported by substantial evidence.

In summary, the court has determined that three of the four reasons provided by the ALJ for discounting Plaintiff's statements are not supported by substantial evidence. The ALJ's remaining reason for discounting Plaintiff's testimony – that his mental health allegations are not supported by the objective medical record – alone cannot legally suffice to discount Plaintiff's testimony. *Burch*, 400 F.3d at 681 (noting lack of medical evidence cannot be the sole basis for discounting testimony). Therefore, the court concludes that on this record, the ALJ has failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Accordingly, the ALJ has erred.

## II.     RFC Assessment, Hypothetical Questions and Steps Four and Five

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 16-3p, 2017 WL 5180304 at *2. Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). If the RFC fails to include all of Plaintiff's limitations, then the hypothetical is

incomplete and the vocational expert's testimony holds no evidentiary value. *Ghanim*, 763 F.3d at 1166; *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

At step five, the Commissioner must show that the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The hypothetical posed to a vocational expert must include those limitations supported by substantial evidence. *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (citing *Osenbrock*, 240 F.3d at 1163-65). "Conversely, an ALJ is not free to disregard properly supported limitations." *Id.*

Here, the ALJ erred in discounting Plaintiff's testimony about the severity of his limitations. The ALJ therefore failed to include all of those limitations into the RFC. *Ghanim*, 763 F.3d at 1166. In his briefing, Plaintiff raises several issues concerning steps four and five, including that the hypothetical posed to the VE differs from the RFC contained in the decision, and that the VE's job numbers fail to show a significant number of jobs exist in the national economy that Plaintiff can perform. The court declines to address Plaintiff's remaining issues at length due to the ALJ's error in assessing Plaintiff's symptom testimony, but notes that Plaintiff's arguments are well-taken.

### III. Remand

After finding the ALJ erred, this court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits. *Garrison*, 759 F.3d

at 1019-20; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020; *Trevizo*, 871 F.3d at 682. Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for further administrative proceedings. *Garrison*, 759 F.3d at 1021; *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir 2003).

In this case, there remain outstanding issues to be resolved and the court has serious doubts as to whether Plaintiff has been disabled since his alleged onset date. Here, the ALJ erred in assessing Plaintiff's subjective symptom testimony. Plaintiff's treating naturopathic physician opined that Plaintiff would miss two days or more of work each month, which would render him unable to sustain competitive employment. Tr. 425. However, the ALJ gave Dr. West's opinion little weight, and the Plaintiff did not challenge that assessment. Plaintiff also submitted additional medical evidence to the Appeals Council, namely lumbar and cervical spine MRI's dated April 16, 2016, that the ALJ has not had an opportunity to review. Given that the ALJ discounted Plaintiff's symptom testimony based on the lack of objective medical support and that April 2016 MRI's pre-date the ALJ's decision, the ALJ should have opportunity to review them in the first instance. *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) ("Where the Appeals

Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence."). Moreover, the medical record may benefit from further development, given that the record contains no physical capacities evaluation. Although not asserted by Plaintiff, the court questions the ALJ's evaluation of the medical evidence in light of the myriad other errors noted above.

The court concludes that the record has not been fully developed, and further proceedings would be useful. Further, the court has lingering doubts that Plaintiff is in fact disabled. For example, Plaintiff testified at the hearing that raked leaves for 20 to 30 minutes, but also inconsistently stated that he cannot look down for more than a few seconds, evidence not discussed by the ALJ. Tr. 49, 55. Viewing the record as whole, Plaintiff may be disabled; yet the record also contains cause for serious doubt. *Burrell*, 775 F.3d at 1141-42 (determining that where the record casts serious doubts about claimant's disability, remand is proper). Therefore, on this record, the court has doubts that Plaintiff has been disabled since his alleged onset date and there are outstanding issues that must be resolved before a disability determination can be made.

Based on the foregoing, the court exercises discretion and concludes a remand for further proceedings consistent with this Opinion and Order is required to permit the ALJ to reevaluate Plaintiff's subjective symptom testimony pursuant to SSR 16-3p; reevaluate the medical evidence as a whole, including the April 2016 MRI's; obtain a consultative physical capacities evaluation if necessary; offer Plaintiff a new hearing, with vocational expert testimony; consider any new findings made by the ALJ and to re-evaluate Plaintiff's RFC; and make adequate step four and five findings incorporating any revised findings.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to Plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 2 day of MAY, 2018.

Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER